JUAN PÉREZ LÓPEZ, Plaintiff and Appellant, *v.* LEOPOLDO SANTIAGO MARCANO, Defendant and Appellee.

No. 8024. Argued April 11, 1940.—Decided May 20, 1940.

*F. Prieto Aznar* for appellant.    *Geigel & Silva* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

In the afternoon of November 10, 1937, a truck loaded with stone traveling from Río Piedras towards Santurce was parked, due to something wrong with the vehicle, on the right side on a straight stretch of road of Carretera Central, near the residence of Mr. Arcelay in Martín Peña. When night came no lights were set up, as required by law. The plaintiff was engaged to watch it and in order to do this he occupied the driver's seat. About 10.30 p.m. a Chevrolet car, driven by defendant, collided against the rear of the truck, with the result that plaintiff suffered the bodily injuries which have been the ground for this suit.

The lower court dismissed the action with costs on the plaintiff, on the ground that, even assuming that the defendant had been negligent in driving his car at a rate of speed faster than that allowed by law, the plaintiff was also negligent and contributed to the accident by leaving the truck at night on the highway without the lights required to avoid danger to passers-by. In stating the grounds for its judgment, the trial court expressed itself as follows:

"If the accident had taken place in daylight, there is no question that the plaintiff would have a clear case of negligence on the

part of defendant; but at night, between 10 and 10.30 p. m., in a dark spot, even conceding that the rate of speed was in excess of that allowed by the law, the fact of the parking of the truck on the right but without lights completely nullifies the duty of the defendant to protect the plaintiff, especially if the latter, who is in charge of the truck, gets inside it, we will not say to wait for the accident, but in complete disregard of his own safety. The fact that the vehicle in the care of the plaintiff was left without lights constitutes, in our opinion. even conceding negligence on the part of the defendant, contributory negligence, although it was also contributory negligence on the part of the plaintiff to stay inside the truck without lights in a dark place and on such a highway as Ponce de León avenue, thus inviting danger. Stating the facts in the most favorable manner for the plaintiff, we shall have to conclude that there was reciprocal or contributory negligence which bars the plaintiff from any right to recover compensation for injuries received. Having reached this conclusion it becomes unnecessary to enter into a discussion as to the injuries inflicted.''

To our judgment the judge of the lower court did not correctly view the legal problem submitted for his consideration. In actions for damages on account of negligence, the trial judge ought not to confine himself to determine whether or not there was negligence on the part of the plaintiff. He should go even farther and determine whether the proximate cause of the accident was either plaintiff's or defendant's negligence. Plaintiff may have been negligent, but if his negligence—although furnishing the propitious circumstances for the commission of the tortious act—was not however the proximate cause of the accident, the theory of contributory negligence is inapplicable and the plaintiff is entitled to compensation for the injuries inflicted on him by reason of defendant's negligence. *Haszczyn* v. *Detroit Creamery Co.*, 275 N.W. 211, 212, and cases cited; *Colón* v. *Shell Co. (P. R.) Ltd.*, 55 P.R.R. 575.

The application of the rule just stated by us requires an analysis of the respective contribution of the parties to the accident in question.

█ It was established by the evidence that on the night in question defendant was traveling in a Chevrolet car, according to his own testimony, at 45 kilometers per hour. The road along which he was traveling was not in as good a condition as it is at present; there were on either side of it wide and fairly deep ditches, the width of the road where the truck was parked being 22 feet; the pavement was wet because it had drizzled shortly before the accident, and defendant's motor car was traveling with dimmed lights although going at the rate of speed indicated. Defendant stated that before he saw for the first time plaintiff's car he had met another truck traveling towards Río Piedras, being left momentarily dazzled by the headlights, notwithstanding which he failed to slow down, and saw plaintiff's truck, according to his own statements, although the stretch of road was straight, 40 or 50 feet away. Although he became aware of the obstacle, not only did he fail to slow down the vehicle within such distance, but also failed to swerve to the left, and this would have been very easy, since he himself admitted that at that moment there was nothing on the road, to the left of the truck, to prevent him from swerving his car. The truck, as appears from the evidence, was painted red and was parked between two electric lampposts about 100 feet apart. Francisco Iturrondo, a witness for the plaintiff, testified that defendant was coming at an ''awful'' rate of speed which was afterwards estimated at 45 miles. This statement was questioned by the trial judge because Martín Andrades, another witness for the plaintiff, had testified that there were no lights at the place where the truck was parked, which led the judge of the court below to the following conclusion:

''But bearing in mind the statement of Martín Andrades, the owner (a chauffeur) of the truck, to the effect that there were no lights at the place where the truck was parked, how could it possibly happen that Iturrondo, the witness who mentioned the speed at which defendant's car was going, could estimate said speed and call it ''awful'?''

Really, we fail to see any logic in such inference. The fact of the truck being parked in a dark place is no bar to a person testifying as to the speed at which a car is traveling with its lights on.

That defendant must have been traveling at an awful speed under the circumstances, is shown by the result of the impact of the vehicles. Defendant testified that, upon recovering his sight after meeting the other vehicle going towards Río Piedras, he became aware of plaintiff's truck when 40 or 50 feet away. It is to be presumed that upon noticing the obstacle defendant, instinctively, began to slow down, and although his brakes were in perfect condition—according to his own testimony—the impact between the car and the truck was such that the car was thrown to the other side of the road and left like an "accordeon," as the witnesses graphically described the condition in which the car was left. The truck, although loaded with stones and with a flat tire, was dragged for about 20 feet, its door thrown open and plaintiff thrown from the driver's seat into the ditch, receiving the injuries to which we shall refer further on.

In our opinion it was not exaggeration on the part of witness Iturrondo when he said that defendant's car was traveling at an "awful" speed.

A motor car is a dangerous contrivance if its operator does not constantly keep it under control so as to stop or swerve the same to avoid causing damage. [5] To travel at night over a road of so much traffic at such speed as defendant was traveling is a clear case of negligence, and there is no doubt that such negligence constituted the proximate cause of the accident, even assuming that the defendant might not have seen the truck long before even though he had put on the light required by the speed at which he was going. If defendant had shown the degree of diligence expected of a reasonable man under the circumstances the acci-

dent would have been avoided, as it was undoubtedly avoided by the hundreds of motor vehicles of every kind which from dusk on a November day until 10.30 p.m. passed on either direction by the spot where the truck was parked.

In *Cothran* v. *Benjamin Cleenewerck & Son et al.,* 209 N.W. 132 (1926), plaintiff was driving a Ford truck loaded with furniture and household goods along the Ravine road near Kalamazoo and stopped at the extreme right of the traveled portion of the road to examine a tire. When he was ready to start the car, it was necessary to crank it. While he was attempting to do so, defendant's car collided against the rear-end of the truck, shoving it forward over the plaintiff, breaking both of his legs and seriously wounding him. Defendant Blanchard was charged that under the circumstances he was driving his car at an excessive rate of speed and that he did not have it under control. It was defendant's contention that the accident was due to the failure of the plaintiff to have the tail light of the truck lighted and in not looking for approaching automobiles before undertaking to crank it. According to Blanchard's testimony, he saw the truck when he was six rods away (99 feet); the road was icy and slippery, for which reason he did not try to apply the brakes or to stop his car, as it was his intention to turn out and pass the truck on the left, but that as he turned into the road he saw another car coming from the opposite direction. Thinking that there was no room to pass, under the circumstances, he thought best to hit the corner of the truck than to hit the other car, and further stated that if it had not been for the other car, he would not have collided with the truck. In affirming a judgment for plaintiff, the Supreme Court of Michigan expressed itself as follows:

"In their brief counsel for the defendants argue that the plaintiff was guilty of contributory negligence. It does not appear that there was anything the plaintiff could have done to stop the defendant from running into his truck. The absence of a tail light had nothing

to do with it. The defendant Blanchard saw the truck when he was six rods away, in ample time to avoid hitting it. His negligence in failing to act as an ordinarily prudent man would have acted under the circumstances was the sole cause of the plaintiff's injuries. It is therefore not necessary to further discuss the defendants' contention as to contributory negligence.'' (P. 133.)

In *Nason* v. *Hodne* (B.C.; 1929), 4 D.L.R. 490 (Canada), the car driven by plaintiff ran out of gasoline and on that account was stopped by him on the right side of the road, off the pavement, but its lights were out although it was dark. Defendant, who was driving another car bound in the same direction, collided with the rear end of plaintiff's car and injured him. In deciding the case, the court held that although plaintiff's car had its lights out, defendant could not successfully allege contributory negligence, since the headlights of defendant's car were in perfect condition and this would have enabled him to see plaintiff's car sufficiently in time to stop his car if he had been looking ahead.

■ In *Eldredge* v. *Sargent*, 96 P. (2d) 871 (1939), the Supreme Court of Kansas, citing with approval the *Cothran* case, *supra*, said:

''Where the absence of lights or warning signals does not prevent a driver from seeing a vehicle in time to avoid it, the absence of lights or signals cannot be said to be the proximate cause of the collision. '(Cases cited.)''

From a monograph in 104 A.L.R. 485, 517, we quote as follows:

''The rule that a person traveling upon a highway has a right to assume that all other persons using the highway will obey the law, and that one is not bound to keep a lookout for others who may violate the law, applies only to those cases where the automobile is being driven in conformity with the law, and not in violation thereof, and it has no application where the automobile is being driven in a negligent manner, where it is not properly equipped with lights, or where it is being driven at an excessive rate of speed (which conditions were all present in this case). In those instances the primary

negligence of the driver of the automobile renders inoperative the rule stated. *Cushing Ref. & Gasoline Co. v. Deshan* (1931) 149 Okla. 225, 300 P. 312.''

There is no doubt that the defendant showed negligence in driving his car at the speed mentioned, taking into account the circumstances already stated.

The plaintiff was also negligent in failing to equip the truck with the lights required by law for similar cases. But if, in spite of such negligence on the part of the plaintiff, the defendant, as he himself testified, saw the truck 40 or 50 feet away, supposing he was unable to stop within such distance, there is no doubt that he might have swerved his vehicle to the left, which was clear, in accordance with his own testimony. This being so, the inevitable conclusion is that the proximate cause of the accident was defendant's negligence, the rule of contributory negligence being inapplicable in the premises.

■ Defendant's liability being established, let us pass to the determination of the measure of damages.

The plaintiff was a man about 45 years of age and was earning $1.50 or $2.00 daily at the time of the accident. The only evidence which appears from the record concerning the injuries which he received is the testimony of Dr. M. García Estrada, from which the following is a transcription:

''That early in the morning of November 11, 1937, he examined for the first time plaintiff Juan Pérez López in the Municipal Hospital of Río Piedras; . . . . that after the examination the witness found that the plaintiff had received a bruise on the central region of the breastbone with hematoma; and erosion with hematoma and laceration of the skin of the right knee; bruise with hematoma and laceration of the right and left lumbosacral regions; that the patient vomited blood copiously when the witness first treated him; that such vomiting was not due to hemoptysis but to internal injuries recently inflicted on the patient  The witness sets up in the court room an electric apparatus and explains in detail to the court two radiographs which he says were taken and developed in his presence; the doctor states that plaintiff, as the result of the blow received by

him, has been suffering from neurosis or traumatic spondylitis of the sacral vertebrae....

"The doctor proceeds in his testimony as follows . . . that the 12th vertebra of plaintiff subsequent to the accident is out of its normal place and position; that this has been felt by the witness by touch; that this appears also from the radiographs; that as the result of the accident, plaintiff has lost the elasticity of the spinal column; that one of the vertebrae is forcibly superimposed on another vertebra; that the vertebrae of the affected region have deviated from their normal position; that this is clearly shown by the last of the radiographs; that the last radiograph does not show any improvement in the condition of the patient, it rather shows an aggravation; that the dorsal disks of that portion of the spine are atrophied, that is, fused, ossified; that as the result of the accident plaintiff is not and never will be able to bend the spine as he used to before the accident; that plaintiff has been so seriously affected that he loses his balance when walking and, therefore, must use a stick; that by means of the microscope the witness discovered a traumatic albuminuria from pressure against the lumbar regions; that there is displacement of the first and second capsules of plaintiff; that plaintiff is permanently disabled; that plaintiff is at present and will always be crippled, useless for manual work; that the condition of plaintiff as the result of the accident will always cause him physical pains and mental sufferings; that the doctor has assured himself that there is no simulation or malingering on the part of plaintiff; that plaintiff has frequently shown a feverish condition and has lost weight; that the temperature of plaintiff, after the accident, has never been normal...."

In view of the personal injuries inflicted on plaintiff, his age and the salary he was earning, we consider that $3,000 is a reasonable compensation for the injuries inflicted on him.

Therefore, this appeal must be sustained, the judgment appealed from reversed and the defendant adjudged to pay to the plaintiff $3,000, including therein $200 as doctor's fees as claimed, and costs, excluding attorney's fees.

ON MOTION FOR REHEARING

## June 18, 1940

The appellee has moved us to reconsider our judgment of the 20th of last month. He claims that "the justice who wrote the opinion committed two errors in weighing the evidence," to wit: (a) in asserting that the truck of plaintiff and appellant was parked between two electric posts one hundred feet apart, and (b) in holding that although appellee had seen appellant's truck 40 or 50 feet away, he failed to swerve to the left so as avoid the collision.

We admit that a lapsus was committed when mentioning "feet" instead of "meters." What we had in mind all the time was a distance of 100 meters. The error is easily explained if it is considered that 100 feet is approximately the equivalent of 33 yards and that posts on a lighted thoroughfare are not so close to each other. This question, however, in no way influenced our decision. A mere reading of our opinion will show that the whole of it rests on the unquestionable fact that defendant and appellee, as evidenced by his own testimony, saw the truck 40 or 50 feet away, a distance which this court considered sufficient to permit the defendant to swerve his car to the left of the road which was clear, and thus avoid the collision. It will be noticed that we did not enter into a consideration of whether a distance of 40 or 50 feet was sufficient to enable the defendant to stop his car before reaching the place where the truck was parked. Our reference was exclusively to the swerving of his car, something easily accomplished by a simple movement of the steering wheel.

Trying to show that our assertion to the effect that the appellee failed to swerve his car is erroneous, appellant quotes the following paragraphs from the statement of the case:

"....that the rear-end of his car collided against the left-hand side of the truck, on the right-hand side of his car; that this

side collided against the left-hand side of the truck, rear-end; that the witness's car lost the part . . . . the left-hand side door was damaged, dented, the right mudguard also; that the collision was not against the fender, the hood; that the hood was not damaged for he tried to swerve, when he saw the black mass he tried to swerve to the left. In answer to the plaintiff he said that such black mass was the truck, which was parked without lights." (Statement of the case, pp. 17 and 18.)

" *        *        *        *        *        *        *

" . . . . that the truck received the impact on the rear-end, on the left side; on the left side and the car on the right-hand side, in front; that the impact was partly against the rear-end of the truck which was without lights, because when he saw the truck closely he tried to avoid the collision and tried to swerve to the left, but always with the front part of his car . . . ." (Statement of the case, p. 21.)

The above quotation from page 17 of the statement of the case is erroneous. Said paragraph does not read as stated by appellee. Appellee says: "that the rear-end of his car collided against the left-hand side of the truck." In the statement of the case said paragraph reads as follows:

". . . . that when he saw that black mass, that he passed the truck, there the collision took place; *the front part* of his car collided against the left-hand side of the truck, on the right-hand side of his car; . . . ." (Italics ours.)

Supposing that the statement of the case reads as erroneously asserted by the appellee, the conclusion from it would be at the most that the defendant was negligent in trying to swerve when he was actually upon plaintiff's truck. There is no doubt that if he had tried to do that very thing when at 30, 20 or perhaps 15 feet away from the truck, he would not have collided at all against the truck. However, as already stated by us, the transcript of the evidence does not read as stated by appellee in his motion for rehearing.

In *Winn* v. *Long*, 203 Cal. 758, plaintiff's car was standing on the road in such a way that there was room to its left for two cars to pass. The sun set on the evening in

question at 5:53 o'clock, and the accident occurred a few minutes more after that time, in spite of which the tail-light of plaintiff's car had not been turned on. The plaintiff was at the time examining the carburetor. Defendant was traveling in the same direction at 25 or 30 miles per hour and saw for the first time plaintiff's car from 30 to 50 feet away. Defendant's car collided against the left rear wheel and mudguard of plaintiff's car. The jury found that the distance from which defendant saw plaintiff's car was sufficient to have avoided the accident by the exercise of ordinary care. The Supreme Court, when affirming the judgment, failed to disturb the verdict of the jury and stated that it could not be said that there was no reasonable basis for the finding of the jury.

The measure of damages in the present case was assessed by the court after taking into consideration the nature of the injuries inflicted on the plaintiff and appellant and we fail to see any justifiable ground for modifying it.

Although some other issues are raised in the appeal it was unnecessary to consider them in view of the conclusion reached in the main opinion.

The motion for rehearing is denied.